[Cite as *Bank of Am., N.A. v. Miller*, 194 Ohio App.3d 307, 2011-Ohio-1403.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| BANK OF AMERICA, NA, | : | |
| | : | Appellate Case No. 2010-CA-60 |
| Appellee, | : | |
| | : | Trial Court Case No. 09-CV-902 |
| v. | : | |
| | : | |
| MILLER et al., | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Appellants. | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of March, 2011.

. . . . . . . . . . .

Lerner, Sampson and Rothfuss, Patricia Block, and Erin E. Bjerkaas, for appellee Bank of America.

Stephen K. Haller, Greene County Prosecuting Attorney, and Jonathan F. Hung, Assistant Prosecuting Attorney, for appellee Greene County.

Colette Carr, for appellee US Bank

Alan A. Biegel Co., L.P.A., and Alan A. Biegel, for appellants.

. . . . . . . . . . . .

FAIN, Judge.

{¶ 1} Defendants-appellants, Stephen and Elsie Miller, appeal from a judgment of foreclosure rendered in favor of plaintiff-appellee, Bank of America, N.A. ("BOA"). The

Millers contend that a genuine issue of material fact exists regarding whether BOA is the real party in interest entitled to judgment on the note and mortgage in question. The Millers also maintain that a genuine issue of material fact exists concerning whether BOA is the holder of the note upon which judgment was sought. Finally, the Millers contend that a genuine issue of material fact exists regarding whether BOA is a successor in interest to Society Mortgage Company, which was the original payee on the note and the original mortgagee on the mortgage.

{¶ 2} We conclude that the trial court erred in rendering summary judgment in favor of BOA. Genuine issues of material fact exist regarding whether BOA is the real party in interest and regarding whether BOA is the holder of the note upon which judgment was sought. We further conclude that there are genuine issues of material fact regarding whether BOA is a successor in interest to the original payee, because BOA failed to submit a proper affidavit to support its claims. Accordingly, the judgment of the trial court is reversed and this cause is remanded for further proceedings.

I

{¶ 3} In August 2009, BOA filed a foreclosure complaint against the Millers. BOA alleged that it was the successor by merger to Society Bank and that it was the holder of a note, a copy of which was currently unavailable. BOA further alleged that the Millers had defaulted on the note and owed $130,059.18, plus interest from March 2009. In addition, BOA claimed that the note was secured by a mortgage, the conditions of which had been broken. BOA therefore asked the court to foreclose and order the property securing the mortgage to be sold. The Millers responded by denying, among other things, that BOA was

the holder of the note.

{¶ 4}   In October 2009, BOA filed a document entitled "Notice of Filing Note," and attached a note as Exhibit A.   In Paragraph 1 of the note, which is entitled "Borrower's Promise to Pay," the borrower promises to pay the "Lender," Society Mortgage Company, the sum of $190,000.   Paragraph 1 further states that:

{¶ 5}   "I [the borrower] understand that the Lender may transfer this Note.   The Lender or anyone who takes this Note by transfer and who is entitled to receive payment is called the 'Note Holder.' "

{¶ 6}   At the end of the note, the following statement appears:

"Pay to the order of _____

" _____
"Without Recourse
"SOCIETY
"Mortgage Company
"By: _____
"Name: <u>Adair B. Cooper</u>
"Title: <u>Secondary Marketing Officer</u>"

{¶ 7}   Some type of writing appears next to the word "By" that looks like a signature, although it is scribbled and illegible.   The note also contains signature lines and the apparent signatures of the Millers.

{¶ 8}   In early December 2009, BOA filed two documents entitled "Notice of Filing Merger Documentation."   Attached to the first notice, as Exhibit A, are copies of documents relating to alleged mergers of various banking entities.   Many of the copies are of poor quality and are illegible in places.   The first page of the exhibit is entitled "Bank of America, National Association, Certificate of Secretary."   A person identified as an assistant secretary

of BOA relates a history of mergers between various entities, and states that the documents attached are true and accurate copies of documents filed with certain states or issued by certain offices. The certificate of the assistant secretary is not notarized, nor does it contain any indication that the matters referred to therein are within the assistant secretary's personal knowledge. Furthermore, the attached documents are copies, not originals, and at times are incorrectly ordered. The documents are also illegible in numerous instances. The content of the second notice of filing merger documentation appears to be identical to the content in the first notice, but some of the copies are slightly more legible.

{¶ 9} According to the assistant secretary's "certificate," Society Mortgage Company merged into KeyCorp Mortgage in April 1994. In turn, KeyCorp changed its name to Nationsbanc Mortgage Corporation of New York in March 1995. Later the same year, Nationsbanc New York merged with a Texas corporation that was also called Nationsbanc Mortgage Corporation. In December 1999, Nationsbanc Mortgage Corporation merged with and into BA Mortgage, L.L.C. Finally, in April 2003, BA Mortgage, L.L.C., merged into BOA.

{¶ 10} After filing the notices, BOA filed a motion for summary judgment in February 2010, supported by the affidavit of David Perez. According to his affidavit, Perez is the assistant vice president of BAC Home Loans Servicing LP ("BAC"). BAC is identified as the servicing agent for BOA. The actual relationship between BOA and BAC is not discussed.

{¶ 11} Perez's affidavit indicates that he has custody of the accounts of "said company," but it is unclear from the affidavit which company he is referring to, because both

BAC and BOA are mentioned in the immediately preceding part of the sentence. The note and mortgage to Society Mortgage are attached to the affidavit as Exhibits A and B, respectively. Perez indicates that these copies are true and accurate reproductions of the originals as they exist in BOA's files, but he does not explain how he knows this is so, given that he is an employee of another company. Perez further indicates that BOA is the holder of the note and mortgage, without any indication of why this is so; in other words, his factual basis for averring this legal conclusion is missing. Finally, Perez identifies a copy of the loan history, which is attached as Exhibit C. Perez's affidavit was signed and notarized in Dallas County, Texas.

{¶ 12} BOA submitted an additional document entitled "Affidavit of Status of Account and Military Affidavit." This affidavit is signed by Robert Rybarczyk, who is identified as an assistant vice president of an entity called "Bank of America (NY) as servicing agent for Bank of America, NA." Rybarczyk states that he has custody and personal knowledge of the accounts of "said company" and that the accounts of the Millers are in default in accordance with the mortgage and note attached to the complaint. Contrary to Rybarczyk's affidavit, the Millers' note was not attached to the complaint—it was filed a month later. Rybarczyk's affidavit was signed and notarized in Erie County, New York.

{¶ 13} These conflicting affidavits, signed and notarized in different states and for different companies, raise questions about the identity of the entity that is the actual servicing agent for BOA, about the nature of the relationship between BOA and these entities, and about who actually has possession of the note.

{¶ 14} In response to the summary-judgment motion, the Millers submitted an

affidavit from Stephen Miller, who denied that BOA is the actual holder of the note and debt. Miller stated that he believed that the Federal National Mortgage Association ("FNMA") is the actual holder of the note and obligation. Miller's statement was based on a computerized search that he conducted on FNMA's website, which indicates that FNMA (or "Fannie Mae") holds a mortgage on the property. BOA argues that Miller's averment that FNMA is the holder of the note should be disregarded, because it is not made from personal knowledge. This may be so, but Miller's averment concerning who is the holder of the note at least has the advantage of specifying *some* factual basis for the averment, in contrast to Perez's averment that BOA is the holder, which specifies *no* factual basis for that averment.

{¶ 15} BOA responded to this argument by noting that the FNMA website advises borrowers to contact their mortgage lender for verification. BOA also states that "Fannie Mae is the investor on this loan, not the holder of the Note and Mortgage."

{¶ 16} In late July 2010, the trial court rendered summary judgment in favor of BOA for $130,059.18, plus interest from March 2009. The court also concluded that the conditions of the mortgage were broken, and ordered foreclosure.

{¶ 17} The Millers appeal from the summary judgment and decree of foreclosure.

II

{¶ 18} The Millers' first assignment of error is as follows:

{¶ 19} "A genuine issue of fact exists in respect to whether the plaintiff is the real party in interest entitled to judgment on the note and mortgage in question."

{¶ 20} Under this assignment of error, the Millers contend that BOA is not the real party in interest, because BOA did not have possession of the note when it filed the complaint.

In this regard, the Millers note that the note was faxed from an entity identified as "U.S. Bank Document Custody" on September 21, 2009, nearly a month after the complaint was filed. The Millers further contend that there are factual issues regarding whether FNMA is the real party in interest, because BOA has admitted that FNMA is the investor on the loan.

{¶ 21} "A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers MetroParks* (1999), 134 Ohio App.3d 754, 760. "We review decisions granting summary judgment de novo, which means that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, ¶ 16.

{¶ 22} Regarding the real-party-in-interest issue, Civ.R. 17(A), states:

{¶ 23} "Every action shall be prosecuted in the name of the real party in interest. * * * * No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

{¶ 24} "Standing is a threshold question for the court to decide in order for it to proceed to adjudicate the action." *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 77. The issue of lack of standing "challenges the capacity of a party to bring an action, not the

subject matter jurisdiction of the court." Id. To decide if the requirement has been satisfied that an action be brought by the real party in interest, "courts must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right to relief." *Shealy v. Campbell* (1985), 20 Ohio St.3d 23, 25.

{¶ 25} The real party in interest in foreclosure actions is the current holder of the note and mortgage. *Wells Fargo Bank, N.A. v. Sessley*, Franklin App. No. 09AP-178, 2010-Ohio-2902, ¶ 11. Because promissory notes are negotiable, they may be transferred to someone other than the issuer. That person then becomes the holder of the instrument. R.C. 1303.21(A). However, under R.C. 1301.21(B), if the note is payable to an identified person, negotiation requires transfer of possession of the instrument and endorsement by the holder.

{¶ 26} In the case before us, the note is payable to an identified person—Society Mortgage. Therefore, only Society could have negotiated the note, through transfer of possession and by either endorsing the note to a specific person or endorsing it to "bearer." A bearer is defined as "the person in possession of an instrument, document of title, or certificated security payable to bearer or endorsed in blank."

{¶ 27} Because Society endorsed the note in blank, any entity in possession of the note would be the holder of the note. BOA does not dispute the fact that the note was not attached to the complaint. BOA also does not dispute the fact that a *copy* of the note was later faxed by U.S. Bank. BOA contends, however, that U.S. Bank was merely a custodian of the note, not the holder. In this regard, BOA provides a link to a website (http://www.usbank.com/cgi_w/cfm/commercial/document_custody_services_ps.cfm), and asks that we take judicial notice under Evid.R. 201 that U.S. Bank Document Custody services

is an agency-approved document custodian.

{¶ 28} Evid.R. 201(D) provides that "a court shall take judicial notice if requested by a party and supplied with the necessary information." Regarding the kinds of facts that may be judicially noticed, Evid.R. 201(B) states:

{¶ 29} "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

{¶ 30} BOA argues that the website information is capable of ready determination because a link has been provided to the site. In *Malone v. Berry*, 174 Ohio App.3d 122, 2007-Ohio-6501, the Tenth District Court of Appeals took limited judicial notice of the fact that a certain website was an online website providing a forum for buyers and sellers, much like eBay. Id. at ¶ 13. The court also cited other cases that had taken judicial notice of factual information found on websites. However, the basis for this generally is that a party should not be able to deny information that it has posted on a website. For example, in one of the cases cited, the Tenth Circuit Court of Appeals took judicial notice of retirement-fund earnings that a party had posted on its website. *O'Toole v. Northrop Grumman Corp*. (C.A. 10, 2007), 499 F.3d 1218; id. at 1224-1225. The court also relied on the party's failure to dispute this information at the trial level, which contributed to the indisputability that is a prerequisite under Evid.R. 201. Id. at 1225.

{¶ 31} The link provided by BOA is to a web page entitled "Document Custody Services." These services are apparently provided by an entity named U.S. Bank Corporate

Trust. The website states that "Document Custody Services group at U.S. Bank Corporate Trust Services is an agency-approved custodian that has extensive experience in the safekeeping of collateral loan files and all related services." Consistent with the view taken by the Tenth District Court of Appeals, we could, perhaps, take judicial notice that this website advertises document-custody services for various customers.

{¶ 32} Nonetheless, we conclude that BOA failed to provide sufficient factual background on the note before us. In its brief, BOA asks us to assume that U.S. Bank was merely a custodian for the note. BOA states in its brief that it endorsed the note in blank and gave it to U.S. Bank as its agent to hold on its behalf. No evidence of these facts was submitted, however, and summary judgment is not properly rendered on the basis of assumptions or statements in briefs. As we stressed in *HSBC Bank USA v. Thompson*, Montgomery App. No. 23761, 2010-Ohio-4158, " 'Financial institutions, noted for insisting on their customers' compliance with numerous ritualistic formalities, are not sympathetic petitioners in urging relaxation of an elementary business practice.' " Id. at ¶ 74, quoting *Adams v. Madison Realty & Dev., Inc*. (C.A.3, 1988), 853 F.2d 163, 169.

{¶ 33} In *HSBC*, we were discussing the order of allonges accompanying a note, but our observation applies equally to documents provided to support a motion for summary judgment. There can be little doubt that a home is the single largest asset of most homeowners. Banks, therefore, should submit adequate documentation when attempting to foreclose on this important asset.

{¶ 34} BOA's remaining documentation does not clarify the actual state of affairs, because it contains conflicting information about which entity has control or custody of the

pertinent records. The Millers' evidence raises additional questions, because the FNMA website indicates that Fannie Mae holds a mortgage on the property. Ironically, BOA contends that we should disregard information obtained from the FNMA website, while accepting information from U.S. Bank's website.

{¶ 35} As with the information on U.S. Bank's website, the most that can be said of the FNMA website is that FNMA appears to provide a process by which individuals may research whether FNMA or Fannie Mae holds a mortgage on a particular property. See http://www.fanniemae.com/loanlookup/. The results of such a search, however, are hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

{¶ 36} A website document can be properly admitted if it fits within an exception to the hearsay rule. For example, in *Hess v. Riedel-Hess*, 153 Ohio App.3d 337, 2003-Ohio-3912, the court held that an appraisal guide from NADAguides.com was admissible under Evid.R. 803(17), which excepts from hearsay matters like market quotations and tabulations generally relied upon by the public. The court stressed that "NADA guidelines in print form and on the Internet are highly reliable and used widely by the general public." Id. at ¶ 25.

{¶ 37} In the case before us, the Millers failed to show that the evidence from the FNMA website falls within a hearsay exception. Accordingly, that evidence alone would not create a genuine issue of material fact for purposes of summary judgment. Under the circumstances, however, we conclude that genuine issues of material fact exist, due to BOA's

confusing documentation. We also note that BOA admits that Fannie Mae is an "investor," but claims that Fannie Mae does not own mortgages or notes. To support this contention, BOA refers us to a website that contains the following description of Fannie Mae:

{¶ 38} "Fannie Mae operates in the U.S. secondary mortgage market. Rather than making home loans directly to consumers, we work with mortgage bankers, brokers and other primary mortgage market partners to help ensure they have funds to lend to home buyers at affordable rates. We fund our mortgage investments primarily by issuing debt securities in the domestic and international capital markets."[1]

{¶ 39} We note that this information conflicts with other information provided by Fannie Mae, which allows individuals to research whether Fannie Mae "owns" their loan. Given the state of the record, the trial court should not have rendered summary judgment in favor of BOA.

{¶ 40} In *Adams v. Madison Realty & Dev., Inc.* (C.A.3, 1988), 853 F.2d 163, the Third Circuit Court of Appeals stressed that from the maker's standpoint, "it becomes essential to establish that the person who demands payment of a negotiable note, or to whom payment is made, is the duly qualified holder. Otherwise, the obligor is exposed to the risk of double payment, or at least to the expense of litigation incurred to prevent duplicative satisfaction of the instrument. These risks provide makers with a recognizable interest in demanding proof of the chain of title." Id. at 168.

{¶ 41} Accordingly, there are genuine issues of material fact as to whether BOA is the real party in interest.

---

[1] See http://www.fanniemae.com/kb/index?page=home&c=aboutus.

{¶ 42} The Millers' first assignment of error is sustained.


III

{¶ 43} The Millers' second assignment of error is as follows:

{¶ 44} "A genuine issue of fact exists in respect to whether the plaintiff is the holder of the note upon which judgment was sought."

{¶ 45} Under this assignment of error, the Millers contend that genuine issues of material fact exist regarding whether BOA is the holder of the note. We have already addressed this issue in our discussion of the first assignment of error. Based on that discussion, there are genuine issues of material fact, on this record, regarding BOA's status as holder of the note.

{¶ 46} The Millers' second assignment of error is sustained.


IV

{¶ 47} The Millers' third assignment of error is as follows:

{¶ 48} "A genuine issue of fact exists in respect to whether plaintiff is a successor in interest to Society Mortgage which was the original payee of the note and the original mortgagee of the mortgage."

{¶ 49} Under this assignment of error, the Millers contend that BOA failed to establish that it is a successor in interest to Society Mortgage, because the documents were not properly certified or authenticated by any public body. BOA contends that the documents are domestic public documents under seal and are self-authenticating under Evid.R. 902(1).

{¶ 50} Evid.R. 902(1) provides:

{¶ 51} "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

{¶ 52} "(1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution."

{¶ 53} As was noted, the merger documents are copies, rather than originals. In Congress Park Business Ctr., L.L.C. v. Nitelites, Inc., Montgomery App. No. 21262, 2007-Ohio-4200, we considered whether the trial court erred in refusing to consider "a copy of a certificate of incorporation bearing the signature of the Ohio Secretary of State, made under his seal and dated February 27, 2003." Id. at ¶ 7. We concluded that the trial court did not err in refusing to consider the document. We noted that the certificate met the requirement under Evid.R. 902(1) for documents under seal, because it bore the signature of the Secretary of State and stated that it was made under his seal. Nonetheless, we rejected the document, stating:

{¶ 54} "[T]he document is clearly a copy, and for that reason its admissibility also requires the supporting testimony of a witness who has compared it to the original and testifies that it is true and correct." Id. at ¶ 12, citing Evid.R. 1005 and *Deyling v. Flowers* (1983), 10 Ohio App.3d. 19.

{¶ 55} In the case before us, BOA submitted an unsworn "certificate" from an

assistant secretary, who states that the copies attached to her certificate are true and correct copies of official articles and certifications filed with various state and national offices. This certificate does not comply with Civ.R. 56(C), which allows summary judgment to be rendered only if the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action show that there is no genuine issue [of] material fact." Civ.R. 56(C) further states, "No evidence or stipulation may be considered except as stated in this rule."

{¶ 56} "An affidavit is a written declaration under oath, made without notice to the adverse party." R.C. 2319.02. The Supreme Court of Ohio has stressed that "[a]n affidavit must appear, on its face, to have been taken before the proper officer and in compliance with all legal requisites. A paper purporting to be an affidavit, but not to have been sworn to before an officer, is not an affidavit." *In re Disqualification of Pokorny* (1992), 74 Ohio St.3d 1238. Accord, *Pollock v. Brigano* (1998), 130 Ohio App.3d 505, 509.

{¶ 57} The evidence submitted by BOA, therefore, does not comply with Civ.R. 56(C), and cannot be used to support the summary judgment in BOA's favor. We also note that the copies are illegible in many instances, and appear out of order. Accordingly, even if the assistant secretary had provided a sworn affidavit, the documents still may not have been sufficient. Courts must be able to read and decipher documents that are submitted; otherwise, the documents prove nothing.

{¶ 58} Accordingly, the Millers' third assignment of error is sustained.

V

{¶ 59} All of the Millers' assignments of error having been sustained, the judgment of

the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

. . . . . . . . . . . . .

GRADY, P.J., concurs.

HALL, J., concurs separately.

HALL, Judge, concurring.

**{¶ 60}** I concur in judgment because the imprecise documentation provided by the plaintiff, coupled with that part of defendant's affidavit that is admissible, raises a genuine issue of fact on the singular issue whether plaintiff is the current holder of the note. Although the assignments of error are interrelated, I don't believe that the defendants have satisfied their reciprocal burden to provide admissible evidence with regard to other issues.

. . . . . . . . . . . . .