[Cite as *GMAC Mtge., L.L.C. v. Giuliano*, 2018-Ohio-1669.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| GMAC MORTGAGE, LLC, f.k.a. GMAC MORTGAGE CORPORATION d.b.a. DITECH.COM, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | **CASE NO. 2011-T-0086** |
| - vs - | : | |
| RICHARD M. GIULIANO, et al., | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2010 CV 1658.

Judgment: Affirmed.

*Brooke Turner Bautista* and *Melany K. Fontanazza*, McGlinchey Stafford, PLLC, 25550 Chagrin Boulevard, Suite 406, Cleveland, OH 44122 (For Plaintiff-Appellee).

*Philip D. Zuzolo*, Zuzolo Law Office, LLC, 700 Youngstown-Warren Road, Niles, OH 44446 (For Defendants-Appellants).

THOMAS R. WRIGHT, P.J.

{¶1} Appellants, Richard M. and Margaret J. Giuliano, appeal the judgment and decree in foreclosure issued in favor of appellee, GMAC Mortgage, LLC ("GMAC").

Appellants allege the trial court erred in granting summary judgment in favor of GMAC. We affirm.

{¶2} In December of 2000, appellants took a loan with appellee in connection with the purchase of a house and executed a 30-year note ("Note"). Appellants' repayment obligations under the Note were secured by a mortgage ("Mortgage") executed on the same day. Appellants defaulted on the loan in August 2008, and failed to cure the default by paying the total reinstatement amount. Appellee exercised its rights under the Mortgage and accelerated the entire principal balance on the Note together with interest, fees, advances for taxes, insurance, and other costs.

{¶3} In June 2008, appellee agreed to a repayment agreement ("Repayment Agreement") requiring appellants to make six consecutive monthly payments in an amount sufficient to bring their account current by December 2008. The Repayment Agreement included a provision permitting appellee to undertake collection or foreclosure activities without notice if payments were not timely received. In addition, the Repayment Agreement provided that it would be automatically voided if appellants filed for bankruptcy during the Repayment Agreement.

{¶4} Appellants failed to make timely payment under the Repayment Agreement, and shortly after, in October 2008, filed for Chapter 7 bankruptcy. Both of these events resulted in automatic cancellation of the Repayment Agreement.

{¶5} In December 2008, appellee filed its first foreclosure action against appellants. Appellee was denied summary judgment in that case in May 2010 and voluntarily dismissed the action. Despite appellants' failure under the Repayment Agreement, appellee considered appellants for loan modifications in January 2009 and March 2009, but appellants did not qualify. Appellee eventually offered appellants a

2

loan modification in December 2009, but they chose not to accept the offer and never tendered sufficient funds to reinstate their defaulted mortgage loan. Consequently, appellee filed the underlying second foreclosure complaint in June 2010. Appellants filed an answer and counterclaim in September 2010.

{¶6} In July 2011, the trial court granted appellee's motion for summary judgment, dismissed appellants' counterclaim with prejudice, and issued the decree in foreclosure.

{¶7} Appellants filed the present appeal, which was stayed pending their bankruptcy proceedings. Their sole assigned error asserts:

{¶8} "The trial court committed prejudicial error in granting Plaintiff's-Appellee's, GMAC Mortgage LLC's, motion for summary judgment."

{¶9} Appellants originally raised two assigned errors with multiple sub-arguments. However, they withdrew their second assigned error in its entirety. Appellants also withdrew their second and fifth sub-arguments under their first assignment of error.[1] Accordingly, three issues remain for review under appellants' first assigned error.

{¶10} Appellants argue the court erred in granting summary judgment because the summary judgment evidence shows: that appellee lacked standing to foreclose; that appellee committed a fraud upon the court by submitting altered evidence, and as such, the doctrines of judicial estoppel or unclean hands applies, and that appellee

---

[1] Appellants initially raised five sub-arguments in their first assigned error, but they withdrew their second and fifth sub-arguments in their reply brief. However, after a protracted bankruptcy stay, appellants reasserted their third sub-argument, stating they withdrew it in error. Appellee argues we should not address this argument since it was withdrawn. However, we address their third sub-argument because appellee had the opportunity to brief the issue, and it is appellants' argument to withdraw, not appellee's.

failed to honor appellants' substantial performance under the repayment agreement and caused their own damages.

{¶11} "Upon filing a motion pursuant to Civ.R. 56, the movant has the initial burden of providing the trial court a foundation for the motion and is required to specifically identify portions of the record demonstrating the absence of genuine issues of material fact relating to the non-movant's position. *Dresher v. Burt*, 75 Ohio St. 3d 280, 293 * * *. If the movant meets its initial burden, the burden then shifts to the non-movant to provide specific facts that would establish a genuine issue for trial. *Id.* With respect to evidential quality, the movant cannot discharge its initial burden under Civ.R. 56 simply by making a blank assertion that the non-movant has no evidence to prove its case, but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C). *Dresher, supra.* Similarly, the non-movant may not rest on conclusory allegations or denials contained in the pleadings; rather, he or she must submit evidentiary material sufficient to create a genuine dispute over material facts at issue. Civ.R. 56(E); *see, also, Dresher, supra.* * * * A reviewing court must follow the same standard used by the trial court. 'In the parlance of appellate law, we review an award of summary judgment de novo.' * * *." *Midwest Bus. Capital v. RFS Pyramid Mgmt., LLC,* 11th Dist. Trumbull No. 2011-T-0030, 2011-Ohio-6214, ¶30-31.

{¶12} Appellants contend there is a genuine issue of material fact as to appellee's standing to file the underlying foreclosure because appellee was allegedly not in possession of any contractual rights of the owner of the Note and Mortgage when the action was filed. Specifically, appellants argue that Federal Home Loan Mortgage Corporation ("Freddie Mac") is the contractual owner of the Note and Mortgage, and

4

thus, it was the only entity with the right to enforce its interest under the Note and Mortgage.

{¶13} In support of their argument, appellants assert that appellee has offered several different versions of the Note in prior judicial proceedings, thus raising a genuine dispute of material fact as to which Note is the correct version. Further, appellants argue that appellee is judicially estopped from asserting its rights under the Note and Mortgage because it relied on conflicting versions of those instruments in both the 2008 foreclosure case and the bankruptcy proceeding.

{¶14} However, appellee establishes that possession of appellants' Note has simply changed since these prior proceedings, and while appellee does not dispute that Freddie Mac owns the loan, GMAC nonetheless establishes that upon filing the instant suit, it was the servicer in possession of the Note with rights of enforcement.

{¶15} Moreover, appellee argues that it is entitled to summary judgment because the Civ.R. 56(C) evidence undisputedly shows that it is in possession of the Note, and therefore, has the right to enforce the same even though it is not the owner. Accordingly, the pivotal question is whether the summary judgment evidence raised a genuine issue of material fact regarding appellee's right to enforce the Note.

{¶16} In foreclosure actions, the real party in interest is the current holder of the note and mortgage. *U.S. Bank Natl. Assn. v. Mobile Assoc. Natl. Network Sys., Inc.*, 195 Ohio App.3d 699, 2011-Ohio-5284, ¶37 (10th Dist.2011); *Bank of Am., N.A. v. Miller,* 194 Ohio App.3d 307, 2011-Ohio-1403, ¶25 (2nd Dist.2011). "It is inherent in the character of negotiable instruments that any person in *possession* of an instrument which by its terms is payable to that person *or to bearer* is a holder and may be dealt with by anyone as a holder." R.C. 1303.23, Official Comment, ¶2 (Emphasis added);

5

R.C. 1301.201(B)(21). Therefore, ownership is not the only element giving rise to the right to enforce a note and mortgage in a foreclosure action. Possession by a person of an instrument payable to bearer also qualifies the possessor as a real party in interest with standing to file a foreclosure action. *Id.*

{¶17} Based on a review of the Civ.R. 56(C) evidence, it is undisputed that appellee was in possession of the Note and Mortgage at the time the foreclosure complaint was filed. Accordingly, appellee had standing to enforce its rights under the Note and Mortgage.

{¶18} Appellee submitted the following in support of its motion for summary judgment: (1) two affidavits of Michael Bennett, Senior Litigation analyst for appellee; (2) a copy of the Note and Mortgage endorsed in blank by GMAC Corp.; (3) the Repayment Agreement; (4) an accounting history of the loan; (5) an assignment of mortgage from Freddie Mac to appellee; (6) a certificate of assignment; and (7) a Freddie Mac servicer guide.

{¶19} In his affidavits, Bennett attests that the Note and Mortgage are true and accurate copies of the original, and that although Freddie Mac purchased appellants' loan, appellee was in possession of both the Note and Mortgage at the time the underlying foreclosure was filed. Bennett further verifies that appellee has been the servicer at all times since December 2000 when both instruments were executed. Although not raised as an issue by appellants, Bennett also confirms that the Mortgage was assigned from appellee to Freddie Mac, and then from Freddie Mac back to appellee. Thus, appellee establishes that at all relevant times, it was in possession of appellants' original Note, endorsed in blank, and that appellee is the assignee of record

6

of appellants' Mortgage. Accordingly, appellee was entitled to enforce the Note and foreclose on the Mortgage.

**{¶20}** Appellants failed to submit any evidence challenging appellee's possession of the Note and Mortgage at the time of the current foreclosure. While appellants presented *some* evidence demonstrating that appellee was not in possession of the Note in 2008, the uncontroverted evidence reveals that appellee had possession of both the Note and Mortgage at the time this foreclosure was filed. Thus, appellee had standing to foreclose.

**{¶21}** Notwithstanding, appellants assert under their third sub-argument that appellee is judicially stopped or precluded based on the doctrine of unclean hands from claiming standing because of its previous reliance on other versions of the Note and Mortgage in its prior 2008 foreclosure and in appellants' 2008 bankruptcy proceeding.

**{¶22}** Regardless of appellants' arguments, however, they fail to come forward with any Civ.R. 56(C) evidence showing that appellee has maintained a contrary position or that appellee acted in a willfully inequitable or unfair manner as alleged. Accordingly, these arguments lack merit.

**{¶23}** Appellants' fourth and final sub-argument asserts that they submitted summary judgment evidence raising genuine issues of material fact as to their compliance with the Repayment Agreement and their right to reinstate the loan. They point to their own affidavits and payment history as illustrating that they qualified for partial reinstatement as set forth in the Freddie Mac servicer guide ("Guide").

**{¶24}** As a threshold matter, appellee claims appellants did not raise this argument to the trial court, thus waiving the issue for purposes of appeal. However, appellants did argue the issue in their memorandum in opposition to appellee's motion

7

for summary judgment to which appellee had the opportunity to respond. Civ.R. 56(C). Therefore, the issue is not waived.

**{¶25}** First, the express terms of the Repayment Agreement required appellants to make six, consecutive monthly payments no later than the second of each month. The Repayment Agreement also states that it would be voided automatically if appellants filed for bankruptcy.

**{¶26}** Appellants made the first payment one day late. The second and third payments were either incomplete or late. Appellants then filed for bankruptcy shortly thereafter. Their untimely payments and bankruptcy filing both automatically voided the Repayment Agreement by its express terms.

**{¶27}** Second, appellants allege that they satisfied the Freddie Mac partial reinstatement provision, but that appellee failed to advise them of this option. Regardless of their argument, the language in the Guide governs the relationship between the servicer and Freddie Mac, not the servicer and the borrower. "The [servicing] guidelines do not exist for the benefit of the borrowers." *Natl. City Real Estate Servs. L.L.C. v. Shields*, 11th Dist. Trumbull No. 2012-T-0076, 2013-Ohio-2839, ¶31, citing *Wells Fargo Bank, N.A. v. Sinnott,* No. 2:07CV169, 2009 U.S. Dist. LEXIS 94226, 16, 27-31 (D. Vt. Aug 17, 2009); *CitiMortgage, Inc. v. Carpenter,* 2d Dist. Montgomery No. 24741, 2012-Ohio-1428 ¶14-16; *see also Deerman v. Fed. Home Loan Mtge. Corp.,* 955 F.Supp. 1393, 1404 (N.D.Ala.1997), *aff'd sub nom. Deerman v. Fed. Home Loan Mtge.,* 140 F.3d 1043 (11th Cir.1998).

**{¶28}** Moreover, although the Guide states that a servicer shall *accept* partial reinstatement from the borrower, the Guide does not place a duty on the servicer to affirmatively advise the borrower about this reinstatement option.

8

{¶29} Pursuant to the express terms of the Guide, appellee was required to accept partial reinstatement if certain conditions were met. Those conditions state the borrower must submit payment "in cash or certified funds of: (a) [a]ll outstanding legal fees and related expenses * * * and (b) an amount equal to, at a minimum, the first payment due under the repayment plan." The Guide further provides that the borrower must execute a written plan including information regarding their payments and the borrower's financial ability to make those payments.

{¶30} Bennett confirms in his affidavit that appellee offered appellants a loan modification in December 2009, but appellants declined. Bennett further states that appellants never tendered sufficient funds to either partially or fully reinstate their defaulted mortgage, and they never contacted appellee indicating they had sufficient funds to do so. Accordingly, appellants' fourth and final sub-argument lacks merit.

{¶31} Based on the foregoing, appellants' sole assignment of error lacks merit in its entirety. The trial court correctly granted summary judgment in favor of appellee, and the judgment entry and decree in foreclosure is affirmed.


DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

Concur.

9