# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| CITIMORTGAGE, INC., | No. 50895-8-II |
| Respondent, | |
| v. | |
| PAUL A. MOSELEY; MICHELLE L. MOSELEY; LUDLOW MAINTENANCE COMMISSION; DOES 1-10 INCLUSIVE; UNKNOWN OCCUPANTS OF THE SUBJECT REAL PROPERTY; PARTIES IN POSSESSION OF THE SUBJECT REAL PROPERTY; PARTIES CLAIMING A RIGHT TO POSSESSION OF THE SUBJECT REAL PROPERTY; ALL OTHER UNKNOWN PERSONS OR PARTIES CLAIMING ANY RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE REAL ESTATE DESCRIBED IN THE COMPLAINT HEREIN, | UNPUBLISHED OPINION |
| Appellants. | |

MELNICK, J. — In this judicial foreclosure proceeding, Paul Moseley, a self-represented litigant, appeals the trial court's grant of summary judgment in favor of CitiMortgage, Inc. (Citi). Moseley argues that the trial court committed numerous procedural errors when it failed to state its findings of fact and conclusions of law, failed to state what documents it relied on, denied his motion to strike the declarations supporting Citi's motion for summary judgment, and violated his right to possession during the redemption period. Moseley argues that the trial court erred in granting summary judgment because the statute of limitations barred it, previous nonjudicial foreclosure attempts barred it, and Citi did not have standing to institute the proceedings. Moseley

also argues that genuine disputes of material fact remain regarding whether the promissory note's chain of title was broken and whether the note the trial court relied on was counterfeit. Finally, Moseley argues that the court's grant of summary judgment violated his constitutional right to a jury trial.

We affirm.

FACTS

On March 2, 2008, Paul and Michelle Moseley obtained a loan for their home in Jefferson County (the property). The loan was documented by a promissory note and secured by a deed of trust. The note required the Moseleys to pay $262,500 plus 5.5 percent yearly interest, for monthly payments of $1,490.45. The note was endorsed in blank. The deed of trust listed the Moseleys as the borrowers, First American Title Company as the trustee, Citi as the lender, and Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary and nominee for the lender. The deed of trust contained an acceleration clause.

In late 2010, the Moseleys stopped making monthly payments.

In May 2011, Moseley filed suit in federal court. *Moseley v. CitiMortgage Inc.*, No. C11-5349RJB, 2011 WL 5175598 (W.D. Wash. Oct. 31, 2011) (court order) (*Moseley* I), *aff'd*, 564 F. App'x 300 (2014). The complaint sought, among other remedies, "a declaration that the Moseleys [were] the exclusive title holders" to the property and that the note was "void, invalid, satisfied and/or lost." *Moseley* I, 2011 WL 5175598, at *1.

In June, MERS assigned its interest in the note and deed of trust to Citi. In October, the district court granted Citi's motion for summary judgment on all claims and stated "there [were] no factual allegations that would state a claim that the Deed of Trust and Note [were] void or invalid." *Moseley* I, 2011 WL 5175598, at *8.

In June 2014, Citi accelerated all outstanding payments on the loan.

In October, Moseley filed another lawsuit in federal court, seeking to have the court discharge his debt because Citi refused to accept a check he sent to Citi for the balance of the outstanding loan amount. *Moseley v. CitiMortgage, Inc.*, No. 3:14-cv-05802-RJB, 2015 WL 728655, at *1 (W.D. Wash. Feb. 19, 2015) (court order) (*Moseley* II), *aff'd*, 671 F. App'x 1008 (2016). The court granted Citi's motion to dismiss on all claims. *Moseley* II, 2015 WL 728655, at *5.

Sometime thereafter, Citi made unsuccessful attempts to nonjudicially foreclose on the property.

In December 2016, Citi sued the Moseleys and all others with an interest in the property, seeking to judicially foreclose on the property. Moseley filed an answer and counterclaim. In his answer, Moseley contested the validity of his signature on the note. Moseley later filed a "motion to dismiss to quiet title," alleging that under a recent Washington Supreme Court case, MERS was not a valid beneficiary and thus its assignment of the note and deed of trust to Citi was invalid. Clerk's Papers (CP) at 161. The court denied the motion.

Citi then moved for summary judgment. Citi argued that the Moseleys' missed payment on December 1, 2010 constituted default under the note and deed of trust. Citi argued that the Moseleys failed to make any payments since December 1, 2010, and that acceleration occurred on June 20, 2014. In its motion, Citi provided a list of the "evidence relied upon," including the declarations of Joseph McCormick, Citi's lawyer; Jennifer Ollier, Citi's Vice President-Document Control; and Lorissa Russelburg, Citi's Assistant Vice-President. CP at 422. All three declarations were signed under the penalty of perjury. McCormick's declaration attached court decisions from *Moseley* I and *Moseley* II, and a copy of the note.

3

Moseley filed motions to strike the declarations of McCormick, Ollier, and Russelburg. The court's ruling is not in the record.

Moseley then filed a response in opposition to summary judgment. After a hearing, the trial court granted Citi's motion. The order granting summary judgment did not contain findings of fact, conclusions of law, or the evidence the court relied on in coming to its decision. The court then entered a judgment and decree of foreclosure. The judgment and decree provided that the purchaser of the property was entitled to exclusive possession from the date of sale. Moseley appealed.

Subsequently, the trial court issued an order of sale.

ANALYSIS

I.  LEGAL PRINCIPLES

We review an order for summary judgment de novo, performing the same inquiry as the trial court. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). "We consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party." *Rublee v. Carrier Corp.*, 192 Wn.2d 190, 199, 428 P.3d 1207 (2018). "Summary judgment is proper when the record demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Munich v. Skagit Emergency Commc'n Ctr.*, 175 Wn.2d 871, 877, 288 P.3d 328 (2012).

II.  PROCEDURAL ERRORS

A.  Findings of Fact and Conclusions of Law

Moseley argues that the trial court's order on summary judgment was improper because it did not contain written findings of fact or conclusions of law. We disagree.

4

In a summary judgment, a trial court's findings of fact and conclusions of law are not required under the civil rules. CR 52(a)(5)(B). In fact, they are superfluous because we review summary judgment orders de novo. *Hubbard v. Spokane County*, 146 Wn.2d 699, 706 n.14, 50 P.3d 602 (2002), *overruled on other grounds by Rose v. Anderson Hay & Grain Co.*, 184 Wn.2d 268, 358 P.3d 1139 (2015).

B.      Documents Relied On

Moseley argues that the trial court erred under RAP 9.12[1] because it did not list the evidence upon which it relied in its order granting Citi's summary judgment motion. We agree that the court erred but conclude that the error was harmless.

RAP 9.12 provides: "The order granting or denying the motion for summary judgment shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered."

Moseley cites no authority to support his argument that the summary judgment order's failure to comply with RAP 9.12 requires reversal. In fact, when the documents a trial court considered, but failed to specifically list in its order, are included in the record on appeal, any error in failing to specifically list those documents is harmless. *W.R. Grace & Co. v. Dep't of Revenue*, 137 Wn.2d 580, 591, 973 P.2d 1011 (1999).

Moseley does not contend that the record on appeal differs from the record the trial court considered. We conclude that the trial court's failure to comply with RAP 9.12 was harmless.

---

[1] A related rule is CR 56(h). Moseley does not argue that the trial court's order failed to comply with CR 56(h).

C.    Declarations

Moseley argues that the trial court erred when it did not grant his motion to strike the three declarations used in support of Citi's motion for summary judgment. We disagree.

1.    Legal Principles

We review de novo evidentiary rulings made by the trial court in conjunction with a summary judgment order. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). De novo review "is consistent with the requirement that the appellate court conduct the same inquiry as the trial court." *Folsom*, 135 Wn.2d at 663.

A party may support a motion for summary judgment by filing declarations to supply the court with additional facts. CR 56(a), (b); GR 13. The declarations must be based on personal knowledge, set forth such facts as would be admissible in evidence, and "show affirmatively that the [declarant] is competent to testify to the matters stated therein." CR 56(e). Similarly, ER 602 states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is inadmissible unless it falls within an exception. ER 802.

Business records of regularly conducted activity are an exception to the hearsay rule. RCW 5.45.020; *State v. Iverson*, 126 Wn. App. 329, 337, 108 P.3d 799 (2005). Court orders from other jurisdictions can satisfy the business records exception. *OneWest Bank, FSB v. Erickson*, 185 Wn.2d 43, 68-69, 367 P.3d 1063 (2016). "RCW 5.45.020 does not require examination of the person who actually made the record." *Iverson*, 126 Wn. App. at 337. Testimony by the "custodian" of the records "or other qualified witness" will be sufficient to properly introduce the

record. RCW 5.45.020. Reviewing courts interpret the statutory terms "custodian" and "other qualified witness" broadly. *State v. Quincy*, 122 Wn. App. 395, 399, 95 P.3d 353 (2004).

###### 2. McCormick Declaration

Moseley argues that McCormick had no personal knowledge of the case and therefore his declaration should have been stricken. We disagree.

McCormick stated under penalty of perjury that he was acting as Citi's counsel and that he had personal knowledge of the facts stated in his declaration. He also stated that the attached exhibits consisted of true and correct copies of previous judicial orders adjudicating claims made by Moseley against Citi and that the attached note was a true and correct copy of the original.

Because McCormick had personal knowledge regarding the previous judicial orders and because the orders and note met the business records exception, the trial court did not err in considering McCormick's declaration.

###### 3. Ollier and Russelburg Declarations

Moseley argues that Ollier's and Russelburg's declarations violated ER 602 and 802.[2] We disagree.

In their declarations, Ollier and Russelburg declared under penalty of perjury that they were employed by Citi as the Vice President-Document Control and Assistant Vice President, respectively. They further stated they had personal knowledge of Citi's practices of creating and maintaining business records, and they had personal knowledge from their own review of records related to Moseley's note and deed of trust. Their declarations also said the attached records were

---

[2] Below, Moseley did not argue that the exhibits attached to Ollier's and Russelburg's declarations failed to satisfy the best evidence rule. Hence, we do not consider this argument. RAP 2.5(a).

true and correct copies of documents which were made at or near the time of the occurrences, and created and kept in the regular course of Citi's business activities.

Because Ollier and Russelburg had personal knowledge of the information in their declarations and because the attached exhibits satisfied the business records exception, the trial court did not err in considering Ollier's and Russelburg's declarations.

D.      RCW 6.23.110(4)

Moseley argues that the judgment and decree entered by the trial court violated RCW 6.23.110(4). He argues that the order violates the statute because "it provided the purchaser[] exclusive possession of the . . . property during [the] right of redemption period." Br. of Appellant at 35. We disagree.

RCW 6.23.110(4) provides: "In case of any homestead as defined in chapter 6.13 RCW and occupied for that purpose at the time of sale, the judgment debtor shall have the right to retain possession thereof during the period of redemption without accounting for issues or for value of occupation." The redemption period begins on the date of the sale. RCW 6.23.020(1).

Moseley challenges the following portion of the judgment and decree:

Plaintiff or any other party to this suit may become the purchaser at the sale of the real property. The purchaser is entitled to exclusive possession of the real property from and after the date of sale and is entitled to such remedies as are available at law to secure possession, including a writ of assistance, if Defendants or any other party or person shall refuse to surrender possession to the purchaser immediately on the purchaser's legal demand for possession.

CP at 306. The trial court subsequently entered an order of sale.

Moseley asserts that he had a possessory right to the property during the redemption period afforded to homesteads. However, nothing in the record indicates that the property was a homestead as that term is defined in chapter 6.13 RCW. Furthermore, although the court issued an order of sale, Moseley argues that "the Order [of Sale] was not successful and was not

8

executed." Reply Br. of Appellant at 2. The redemption period does not begin until the date of sale. The record does not contain the date of sale.

The record is inadequate for us to review this argument. As a result, we do not consider it.

III.    STATUTE OF LIMITATIONS

Moseley argues that Citi's action is barred by a six-year statute of limitations under RCW 4.16.040. Moseley argues that the cause of action accrued on November 2, 2010, and because Citi filed its lawsuit on December 7, 2016, Citi's action is barred.[3] We disagree.

An action upon a contract or agreement in writing must be commenced within six years. RCW 4.16.040(1). "As an agreement in writing, [a] deed of trust foreclosure remedy is subject to a six-year statute of limitations." *Edmundson v. Bank of Am., NA*, 194 Wn. App. 920, 927, 378 P.3d 272 (2016).

An installment promissory note is payable in installments and matures on a future date. *Edmundson*, 194 Wn. App. at 929; *see also Herzog v. Herzog*, 23 Wn.2d 382, 388, 161 P.2d 142 (1945). "'[W]hen recovery is sought on an obligation payable by installments, the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it.'" *Edmundson*, 194 Wn. App. at 930 (quoting *Herzog*, 23 Wn.2d at 388). When acceleration occurs, "the statute of limitations for the entire debt accrue[s] at that time." *4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 195 Wn. App. 423, 436, 382 P.3d 1 (2016).

---

[3] Moseley additionally argues, for the first time on appeal, that we should separate any unpaid installments due before December 7, 2010. We conclude that Moseley has waived this argument under RAP 2.5(a).

In order to accelerate the obligations due under a note, "[s]ome affirmative action is required, some action by which the holder of the note makes known to the payors that he intends to declare the whole debt due." *Weinberg v. Naher*, 51 Wash. 591, 594, 99 P. 736 (1909).

Here, the 2008 promissory note was an installment note. The note stated that the Moseley's "monthly payment will be in the amount of . . . $1,490.45," and the deed of trust stated that the Moseleys "promised to pay th[e] debt in regular Periodic Payments." CP at 317, 322. The undisputed evidence shows that acceleration occurred on June 20, 2014, and therefore, the statute of limitations for the entire debt accrued at that time. Because the complaint in the current suit was filed on December 7, 2016, well within the six-year statute of limitations, we conclude that Citi's lawsuit was not time-barred.

IV.     NONJUDICIAL FORECLOSURE ATTEMPTS

Moseley argues that Citi is barred from its current suit because of previous voluntary discontinuances of nonjudicial foreclosure actions. Moseley relies on RCW 62A.2A–506. We disagree.

Chapter 62A.2A RCW "applies to any transaction, regardless of form, that creates a lease." RCW 62A.2A–102. In defining "lease," RCW 62A.2A–103(j), states that the "retention or creation of a security interest is not a lease."

Because Citi is suing the Moseleys to enforce a security interest in the property, not a lease, and because Moseley has not provided any authority indicating that this statutory provision provides him relief, we reject Moseley's argument on this point.

V.    CITI'S STANDING

Moseley argues that under *Bain v. Metropolitan Mortgage Group, Inc.*, 175 Wn.2d 83, 285 P.3d 34 (2012), MERS was an unlawful beneficiary at the outset of the loan. Moseley argues that because MERS was an unlawful beneficiary, its assignment to Citi is meaningless because it had no interest to assign. For this reason, Moseley argues that Citi has no interest in the property and no standing to initiate the judicial foreclosure proceedings. We disagree.

A deed of trust may be judicially foreclosed to secure the performance of an obligation to the beneficiary by a borrower on a negotiable instrument such as a promissory note. *Deutsche Bank Nat'l Tr. Co. v. Slotke*, 192 Wn. App. 166, 171, 367 P.3d 600 (2016). A "person entitled to enforce" a negotiable instrument is "the holder of the instrument." RCW 62A.3–301. The holder of a note is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." RCW 62A.1–201(b)(21)(A). A note endorsed in blank is payable to the bearer and "may be negotiated by transfer of possession alone." RCW 62A.3–205(b). The holder of the note, which is the evidence of the debt, has the power to enforce the deed of trust because the deed of trust follows the note by operation of law. *Bain*, 175 Wn.2d at 104.

Regarding *Bain*, courts have rejected arguments identical to that which Moseley makes here. *E.g.*, *Good v. Fifth Third Bank*, 2014 WL 2863022, at *2 (W.D. Wash., June 23, 2014) (court order) (rejecting the argument that "MERS was not an eligible beneficiary . . . and therefore all subsequent assignments were void"); *Wilson v. Bank of Am., NA*, 2013 WL 275018, at *8 n.9

11

(W.D. Wash. 2013) (court order) ("The *Bain* Court did not state, as the Wilsons allege here, that MERS is incapable of transferring its interest in a deed of trust . . . ."); *Renata v. Flagstar Bank, FSB*, No. 71402-3-I, slip op. at 9 (Wash. Ct. App. July 27, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/714023.pdf ("Renata fails to cite any authority, and we have found none, to support an argument that deeds of trust that name MERS as the beneficiary are void."). We agree with this line of cases.

Because Citi was the holder of the note, it was entitled to enforce the note and deed of trust.

VI.    CHAIN OF TITLE

Moseley argues that because the note and deed of trust were physically separated, the chain of title was broken. We disagree.

Moseley cites *Bank of America, NA v. Miller*, 194 Ohio App. 3d 307, 2011-Ohio-1403, 316, 956 N.E.2d 319, for the proposition that proof of chain of title is required. Although proof of chain of title may very well be required, it does not flow from this assertion that chain of title requires physical proximity between the note and deed of trust at all times.

"We do not consider conclusory arguments that are unsupported by citation to authority." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2013). Because Moseley fails to cite to relevant authorities, we do not consider his argument. RAP 10.3(a).

VII.   EVIDENCE OF A FRAUDULENT NOTE

Moseley argues that there is a genuine dispute of material fact as to whether the note in evidence was counterfeit. Therefore, he argues that summary judgment was improper. We disagree.

Under RCW 62A.3–308(a),

In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the

12

pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, *but the signature is presumed to be authentic and authorized* unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.

(Emphasis added.)

Here, Moseley contested the validity of his signature in his answer. However, because Moseley was neither dead nor incompetent at the time he raised the signature-validity issue, the signature on the note was still presumed authentic and authorized. Moseley failed to present evidence that rebutted this presumption. Accordingly, we conclude that no genuine dispute of material fact exists regarding whether the note was fraudulent.

VIII. CR 56'S CONSTITUTIONALITY

Moseley argues that because he never waived his right to a jury trial, summary judgment in Citi's favor violates his right to such under the Seventh Amendment of the United States Constitution and article I, section 21 of the Washington Constitution. We disagree.

The Seventh Amendment's protection of the jury trial does not apply to civil cases in state courts. *Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 217, 36 S. Ct. 595, 60 L. Ed. 961 (1916); *Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 768, 287 P.3d 551 (2012).

Article I, section 21 of the Washington State Constitution provides: "The right of trial by jury shall remain inviolate." However, "[w]hen there is no genuine issue of material fact . . . summary judgment proceedings do not infringe upon a litigant's constitutional right to a jury trial." *LaMon v. Butler*, 112 Wn.2d 193, 199 n.5, 770 P.2d 1027 (1989). Because we conclude that Moseley has not shown that a genuine issue of material fact exists, we also conclude that the grant of summary judgment did not violate Moseley's right to a jury trial under the Washington Constitution.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Sutton, J.